IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| Sidney N. Harrison,<br>    Plaintiff, | )<br>)<br>) |
| v. | )   Case No. 1:23cv259 (RDA/WEF) |
| Ms. Avent, *et al.*,<br>    Defendants. | )<br>)<br>) |

## MEMORANDUM OPINION

Sidney N. Harrison ("Harrison" or "Plaintiff"), a Virginia inmate, filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 alleging that his constitutional rights were violated while he was detained by the Virginia Department of Corrections ("VDOC") at its Sussex II State Prison ("Sussex II"). Dkt. No. 1. The complaint was screened, deficiencies noted, and Plaintiff filed an amended complaint ("AC") on December 27, 2023. Dkt. No. 17. The AC named six defendants and included six claims. The Court screened the AC and dismissed several defendants, and the claims associated with the dismissed defendants, without prejudice.[1] Dkt. No. 19. The remaining

---

[1] The six defendants in the AC are: Nurse Avent, Correctional Officer Williams, Lt. Richardson (Hearing Officer), Senior Counselor Mitchell-Tyler, former Chief Administrator McDonald, and Grievance Department employee Langford. Plaintiff's claims concern a disciplinary charge involving conduct that occurred on April 8, 2022. Claims 1, 2, 4, and 6, along with related defendants (Avent, Williams, Mitchell-Tyler, and Langford), were dismissed without prejudice on April 25, 2024. Dkt. No. 19. Claim 3 alleges that Defendant Richardson denied him due process because Richardson convicted him on a charge (106a) that was never served on Plaintiff; that Richardson was biased and falsified a document; that Richardson vacated the 233a charge on April 25, 2022; and that Richardson convicted Plaintiff of the 106a charge on May 23, 2022. Dkt. No. 17 at 9-11. Claim 5 alleges that Defendant McDonald violated Plaintiff's Eighth Amendment rights because McDonald imposed or authorized multiple cumulative punishments for Plaintiff's conviction, and that McDonald violated his right to equal protection by the imposition of "cumulative punishments and administrative misconduct." *Id.* at 15, 16. Plaintiff told McDonald that he had never been charged with violating 106a, and McDonald refused to watch the video that proved Plaintiff "did nothing." *Id.*

defendants, Richardson and McDonald, waived service and filed a motion for summary judgment, with affidavits and exhibits. Dkt. Nos. 33, 34. On October 11, 2024, Harrison was advised of his right and opportunity to file responsive materials pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), and the previous version of Local Rule 7(K). Dkt. No. 35. On November 20, 2024, the Court granted Harrison an extension of time to file a response, Dkt. Nos. 36, 37, and Harrison filed his response on December 23, 2024. Dkt. No. 39. Accordingly, the motion for summary judgment is now ripe for disposition. For the reasons that follow, the defendants' motion for summary judgment must be granted.

## I. Undisputed Facts

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any *material* fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (emphasis added). Defendants, pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56, set forth a statement of material facts that Defendants contend are undisputed. Plaintiff has filed a response that disputes some of Defendants' facts.[2] Accordingly, the following statement of facts is derived from a review of Defendants' statement of undisputed facts, those facts agreed to by Plaintiff, and the record.

1. Harrison is an inmate confined in the VDOC, currently detained at the Green Rock Correctional Center ("Green Rock"). Harrison was detained at the Sussex II, a former VDOC facility, at the relevant times. Dkt. No. 17 at 1, 4.

---

[2] The record of admissible evidence includes Defendant's affidavits and exhibits, Dkt. Nos. 34-1 through 34-6; and Plaintiff's affidavit and unobjected-to documents. *See Goodman v. Diggs*, 986 F.3d 493, 498-99 (4th Cir. 2021) (verified pleadings are the "equivalent of an affidavit"). Plaintiff admits Defendants' undisputed statement of facts Nos. 1, 2, and 4; and he also agrees in part with statement of facts Nos. 5-12. Plaintiff's disagreements with several of Defendants' facts is better characterized as an attempt to argue matters that are irrelevant to his claims and hence are not material to the resolution of the motion for summary judgment.

2.      On April 8, 2022, Plaintiff received disciplinary offense charge SXII-2022-0859, a 233a violation, making sexual advances towards a non-offender. Dkt. Nos. 34-1 at ¶ 4; 39-1 at 1.[3]

3.      The charge alleged, specifically, that when a nurse was checking Plaintiff's blood sugar, he "leaned in towards [her], then touched [her] arm and stated, 'I'll stick my fingers inside you and make you wet,'" and then he "also stated, 'You belong to me.'" Dkt. No. 34-3 at 3 (Disciplinary Offense Report SXII-2022-0859); Dkt. No. 39-2 at 21 (same report).[4]

4.      VDOC records show that Plaintiff was served with the charge and advised of his rights on April 8, 2022. *Id.*

---

[3] In his response, Plaintiff also seeks to strike K. Stapleton's Affidavit. Dkt. No. 34-1. Dkt. No. 39 at 3. Stapleton, the VDOC's Offender Discipline Manager, based his affidavit on personal knowledge and the records maintained by the VDOC. Dkt. 34-1 at 1. Stapleton avers that he is generally aware of Plaintiff's allegations and then summarizes relevant VDOC records pertaining to Plaintiff's claims. *Id.* at ¶¶ 3-5. Stapleton does not aver that the facts alleged by the nurse and contained in the charge are true, nor that Defendants complied with various VDOC regulations; he only avers as to what the records show. Plaintiff's objection is unclear and inconsistent with his own response. Plaintiff moves to strike the affidavit but also states that he agrees to the facts summarized in Stapleton's affidavit. Dkt. No. 39-1 at 1-3. Plaintiff's objections to the affidavit are not with the facts but are instead focused (as are all of his pleadings) on his position that the allegations made against him are untrue and that Richardson failed to comply with VDOC regulations and fabricated or falsified those documents summarized by Stapleton. Federal Rule of Civil Procedure 12(f) allows a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." An "argument that the allegations are false [however] is irrelevant to the motion to strike." *See GTSI Corp. v. Wildflower Int'l, Inc.*, 1:09cv123, 2009 WL 2160451, at *10 (E.D. Va. July 17, 2009). Moreover, as Plaintiff agrees with the statements of fact contained in the affidavit (as to what the records show, which is all that is relevant to the dispositive motion), his motion is without merit and is denied. *Id.* (stating a motion to strike "should be denied unless the challenged allegations have no possible relation or logical connection to the subject matter of the controversy and may cause some form of significant prejudice to one or more of the parties to the action" (quoting 5C Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1382 (3d ed. 2004))); *see also Hardy v. Lewis Gale Med. Ctr., LLC*, 377 F. Supp. 3d 596, 605 (W.D. Va. 2019) ("Usually a motion to strike requires a showing that denial of the motion would prejudice the moving party." (citation omitted)).

[4] Plaintiff objects to this statement of undisputed fact stating he "never touched" or "said anything" to the nurse; there was a correctional officer nearby, and the "video" would establish "what the nurse accused [him] of never happened." Dkt. No. 39-1 at 1. Plaintiff's objection seeks to litigate the truth of the charge, which is irrelevant to the present motion. What is relevant is that a charge was made, which Plaintiff admits and does not dispute.

3

5. On April 25, 2022, at the end of the original disciplinary hearing, Richardson vacated the 233a charge and adjourned the hearing. At a later time, the charge was rewritten to a more serious 106a violation, sexual assault upon, or making forcible sexual advances towards, a non-offender. Dkt. Nos. 34-3 at 3 and 39-2 at 21; *see also* Dkt. No. 34-1 at ¶ 4.

6. Plaintiff then submitted an Offender Request for Evidence, asking to view the surveillance video footage, which was denied. Dkt. No. 34-3 at 6; 39-2 at 3. Plaintiff also requested a witness statement from Correctional Officer Owens, who was present at the time of the alleged offense. Dkt. No. 39-1 at 2.

7. At the May 23, 2022 disciplinary hearing, Plaintiff was convicted of the 106a charge. Dkt. Nos. 34-1 at ¶ 4; 39-1 at 1.[5]

8. The penalty imposed for the 106a conviction was loss of good time up to 180 days good conduct allowance or equivalent earned sentence credit. Dkt. Nos. 34-1 at ¶ 4; 39-1 at 2.[6]

9. On June 7, 2022, Institutional Classification Authority ("ICA") held a hearing due to Plaintiff receiving "a 106a [charge] on 4/8/22." Dkt. No. 39-2 at 12. The ICA transfer recommendation was "approved" on "7/20/22 . . . due to recent . . . 106 infraction." *Id.* at 13.

10. The ICA recommended that Plaintiff's Class Level be changed to Class Level 4, and that Plaintiff be transferred to Red Onion State Prison, Sussex I State Prison, or Wallens Ridge State Prison. *Id.*

---

[5] Plaintiff agrees with this statement of fact but adds that the charge was "fabricated," and that he requested the video evidence and a witness statement. Dkt. No. 39-1 at 2. The relevant fact for the remaining claims is that he was convicted, and not that any alleged errors occurred at the hearing because the 106a conviction was subsequently dismissed on appeal.

[6] Plaintiff agrees with this statement of fact but argues the 60 days he spent in segregation and "12 days on suicide watch" were also imposed because of his conviction. Dkt. No. 39-1 at 2. The record of the disposition, which Plainitff does not dispute and agreed with, indicates the only penalty imposed was the loss of good time. Dkt. Nos. 34-3 at 7; 39-1 at 2.

4

11. Plaintiff appealed his disciplinary conviction on June 27, 2022. *Id.* at 24.[7]

12. On August 5, 2022, the warden reviewed "the hearing and supporting documentation," and "the issues [Plaintiff] raised in [his] appeal," and ordered the "charge . . . dismissed." Dkt. No. 34-1 at ¶ 4; Dkt. No. 34-4 at 1. The warden did not specify why the charge

---

[7] Plaintiff's appeal listed eleven allegations of error: 1) his disciplinary hearing was not held within the time requirements; 2) Plaintiff's requests for an advisor, witness statements, and the video were not complied with; 3) Plaintiff was not "re-served" with the charge after it was amended; 4) Richardson failed to comply with the code of ethics; 5) Richardson lied to Plaintiff's advisor by stating that Plaintiff had waived his right to be re-served, and about his requests for witness forms; 6) the penalty was more than loss of good time because Plaintiff was held for 60 days in segregation, lost his job, and his security level changed; 7) Richardson falsified documents; 8) Plaintiff was falsely accused; 9) Plaintiff's reputation was "taken from [him] wrongfully" by false statements; 10) Plaintiff was never served with the 106a charge and he did not waive his right to be re-served; and 11) there was a correctional officer present and the nurse did not report it the correctional officer. Dkt. No. 39-2 at 24-25.

was dismissed.[8]

14. After Plaintiff's conviction was dismissed, his lost good time was restored. Dkt. 34-1 at ¶ 5.[9]

15. The ICA held a hearing on October 5, 2023, and based upon "points scored on his security level scoresheet," Plaintiff was transferred from Sussex II to Green Rock on October 17, 2023. Dkt. 34-2 at ¶ 5. K. Rosch, VDOC's Interstate Compact Coordinator, approved Plaintiff's transfer to "security level transfer to a Level 3 facility." Rosch avers that Plaintiff was not transferred "due to a disciplinary charge." *Id.*

## II. Standard of Review

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that judgment on the pleadings is appropriate, *i.e.*, that no genuine issues of material fact are present for resolution. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The facts which a moving party bears the burden of proving are those which are material: materiality is dictated by "the substantive law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Once a moving party has met its burden of proof, the non-moving party must produce specific facts to generate a disputed issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The court will view the evidence and draw all reasonable

---

[8] Plaintiff agrees with this fact but argues that the dismissal occurred after the "cruel and unusual punishment had [taken] place." *Id.*

[9] Plaintiff alleges that his lost good time was "not correctly restored until [his] May 2024 annual review." Dkt. No. 39-1 at 3.

inferences in the light most favorable to the non-moving party. *Porter v. U.S. Alumoweld Co.*, 125 F.3d 243, 245 (4th Cir. 1997). Nevertheless, "[o]nly disputes over facts which might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

The non-moving party may not defeat a properly supported summary judgment motion by simply substituting the "conclusory allegations of the complaint or answer with conclusory allegations of an affidavit." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). This applies even where the non-moving party is a *pro se* prisoner. *Campbell-El v. Dist. of Columbia*, 874 F. Supp. 403, 406-07 (D.C. 1994). Unsupported speculation is not enough to withstand a motion for summary judgment. *See Ash v. United Parcel Serv., Inc.*, 800 F.2d 409, 411-12 (4th Cir. 1986). Similarly, "[t]he mere existence of some alleged factual dispute" cannot defeat a motion for summary judgment; the dispute must be both "material" and "genuine," meaning that it "might affect the outcome of the suit under the governing law." *Hooven-Lewis v. Caldera*, 249 F.3d 259, 265 (4th Cir. 2001) (emphasis omitted).

### III. Analysis

Claim 3 alleges that Defendant Richardson violated Harrison's due process rights because he received neither a copy of the charge nor several forms he requested (request for witness statements, reporting officer response forms, video footage requests) before the April 25, 2022 hearing, Dkt. No. 17 at 9; Richardson did not re-serve Harrison with a revised 106a charge after Richardson vacated the original 233a conviction, *id.* at 10; and Richardson was biased and falsified documents, *id.* at 12. In Claim 5, Harrison alleges that Defendant McDonald violated his Eighth Amendment rights because he imposed or authorized multiple cumulative punishments for Plaintiff's 106a conviction and that his right to equal protection was violated due to the

"cumulative punishments and administrative misconduct." *Id.* at 15, 16. Although Harrison's pleadings are centered on having the basis for his charge declared false and that the Defendants failed to abide by several VDOC requirements, his claims allege constitutional violations that are not substantiated by the summary judgment record.

*A. Due Process*

Prisoners retain rights under, and may claim the protections of, the Due Process Clause in disciplinary proceedings. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). Specifically, the due process rights that prisoners possess when a protected liberty interest is at stake are: (1) twenty-four-hour advanced written notice of the charges against them, *id.* at 563-64; (2) "a written statement by the factfinders as to the evidence relied on and the reasons for the disciplinary action," *id.* at 564-65 (internal quotation marks and citation omitted); (3) an opportunity to call witnesses and present documentary evidence where doing so "will not be unduly hazardous to institutional safety or correctional goals," *id.* at 566; (4) assistance at the hearing if they are illiterate or if the matter is complex, *id.* at 570; and (5) a sufficiently impartial fact finder. *Id.* at 570-71. To satisfy due process, the fact-finder's decision during a prison disciplinary hearing must be supported by "some evidence." *Superintendent, Mass. Corr. Inst. Walpole v. Hill*, 472 U.S. 445, 455 (1985). Harrison's arguments, however, do not address three controlling legal principles.

First, the filing of a false disciplinary charge alone does not violate a prisoner's civil rights—it is only where there is a resulting Due Process violation in proceedings on the allegedly false charge that it will give rise to a constitutional claim. *See, e.g., Smith v. Mensinger*, 293 F.3d 641, 653-54 (3d Cir. 2002) ("[D]ue process is satisfied where an inmate is afforded an opportunity to be heard and to defend against the allegedly falsified evidence and groundless misconduct reports. Thus, so long as certain procedural requirements are satisfied, mere allegations of falsified

evidence or misconduct reports, without more, are not enough to state a due process claim." (citing *Freeman v. Rideout*, 808 F.2d 949, 951, 953 (2d Cir. 1986))); *see also Sprouse v. Babcock*, 870 F.2d 450, 452 (8th Cir. 1989) (filing of false charges, "standing alone, do[es] not state constitutional claim[]"). To the extent Harrison's response relies upon false charges and documents, his argument has no merit.

Second, Harrison's arguments about violations of VDOC regulations do not support a justiciable claimt. A state official's failure to abide by state procedural laws or regulations does not present a federal due process issue, *Riccio v. County of Fairfax, Va.*, 907 F.2d 1459, 1469 (4th Cir. 1990), and is, therefore, not actionable under § 1983. "'[T]he mere fact that a state agency violates its own procedures does not *ipso facto* mean that it has contravened federal due process requirements.'" *Garraghty v. Com. of Va., Dep't of Corr.*, 52 F.3d 1274, 1285 (4th Cir. 1995) (quoting *Morris v. City of Danville*, 744 F.2d 1041, 1048 n.9 (4th Cir. 1984)).

Lastly, while in the abstract a failure to provide timely notice, a denial of witnesses or documentary evidence, and a biased decision maker can support a claim, Harrison fails to recognize that his 106a conviction was dismissed on appeal—which precludes and is fatal to his claim against Richardson. Richardson's motion correctly recognizes that this Court has held that a successful administrative appeal "cure[s] any procedural defect that may have occurred at the disciplinary hearing." *Thompson v. Robinson*, No. 2:11cv642, 2011 WL 10581990, at *2 (E.D. Va. Dec. 12, 2011) (quoting *Sowell v. Ryan*, 823 F. Supp. 107, 110 (W.D.N.Y. 1992), *aff'd*, 996 F.2d 302 (2d Cir. 1993)), *aff'd*, 474 F. App'x 305 (4th Cir. 2012).[10] More recently this Court

---

[10] *See, e.g., Young v. Hoffman*, 970 F.2d 1154, 1156 (2d Cir. 1992) ("[A]dministrative reversal constituted part of the due process protection [the inmate] received, and it cured any procedural defect that may have occurred. We believe that, as a policy matter, this possibility of cure through the administrative appeals process will encourage prison administrators to correct errors as an alternative to forcing inmates to seek relief in state or federal courts." (citing *Harper*

9

expanded upon the reasoning behind the rule that the reversal of a disciplinary conviction on appeal cures any procedural defect in a disciplinary hearing:

> It would be illogical to hold that due process rights are violated when appellate review remedies the procedural defects in the initial hearing. *See Harper*, 938 F.2d at 105. If this were held to constitute a due process violation, appellate review would be extraneous. Here, plaintiff's conviction was overturned through the normal prison appeal procedure. Thus, even if this court were to find that plaintiff's due process rights were violated in the course of his disciplinary hearing, because the prison's procedure as a whole led to the vindication of his procedural rights, the court would still find that plaintiff was given all the process which he was due.

*Terrell v. Bassett*, 353 F. Supp. 2d 658, 661 (E.D. Va. 2005), *aff'd*, 132 F. App'x 452 (4th Cir. 2005); *cf. McCrae v. Hankins*, 720 F.2d 863, 868 (5th Cir. 1983) ("The constitution demands due process, not error-free decisionmaking[.]").

Harrison also attempts to argue that his placement in segregation, the recommendation that he be transferred to a higher-level security prison, his loss of his prison job, and the loss of his ability to participate in a prison program were impermissible penalties imposed upon him because of his 106a conviction. He is incorrect.

First, placement in segregation for 60 days does not violate due process:

> Confinement while awaiting administrative review which leads to the reversal of the inmate's conviction does not, in itself, violate due process. *Sowell v. Ryan*, 823 F. Supp. at 110; *Hyson*, 820 F. Supp. at 191; *see also Sandin v. Conner*, 515 U.S. 472, 486 (1995) (indicating that the expungement of inmate's record was an appropriate remedy where the inmate had already served his time in segregation). Moreover, delay in the litigation process is commonplace and is not unique to prisoner litigation. *Sowell*, 823 F. Supp. at 110. Thus, plaintiff suffered no undue hardship by having to pursue the appeals process to receive redress.

*Terrell*, 353 F. Supp. 2d at 661; *see Smith*, 293 F.3d at 653 ("confinement in administrative or

---

*v. Lee*, 938 F.2d 104, 105 (8th Cir. 1991))); *Hyson v. Neubert*, 820 F. Supp. 184, 191 (D.N.J. 1993) ("Where prison officials rectify the consequences of a constitutionally deficient disciplinary hearing within a reasonable time, even absent a specific regulatory appeal procedure, the mandates of due process have been satisfied.").

punitive segregation will rarely be sufficient, without more, to establish the kind of 'atypical' deprivation of prison life necessary to implicate a liberty interest. Therefore, [*Sandin*] found that the inmate's segregated confinement was not a denial of due process." (citing *Sandin*, 515 U.S. at 486)).[11]

> Next, as a matter of law, the loss of a prison job does not state a constitutional claim:
>
> > [I]nmates have no independent constitutional right to a prison job, and as such, prison officials may generally terminate an inmate from a particular prison job for any reason without offending federal due process principles. *See, e.g.*, *Altizer v. Paderick*, 569 F.2d 812 (4th Cir. 1978) (work assignments are generally within the discretion of the prison administrator); *Alley v. Angelone*, 962 F. Supp. 827, 834 (E.D. Va. 1997) (prisoner did not have a protected interest in continued employment); *Bulger v. United States Bureau of Prisons*, 65 F.3d 48, 50-51 (5th Cir. 1995) (same); *Coakley v. Murphy*, 884 F.2d 1218, 1221 (9th Cir. 1989) (holding that inmates have no protected property interest in continuing in work-release program).

*Robles v. Sturdinvant*, No. 7:14cv70, 2014 WL 4853409, at *1 (W.D. Va. Mar. 27, 2014), *aff'd*, 583 F. App'x 129 (4th Cir. 2014);[12] *see Gaston v. Taylor*, 946 F.2d 340, 343 (4th Cir. 1991) ("[C]hanges in a prisoner's location, variations of daily routine, changes in conditions of confinement . . . and the denial of privileges—matters which every prisoner can anticipate are contemplated by his original sentence to prison—are necessarily functions of prison management

---

[11] *See also Slezak v. Evatt*, 21 F.3d 590, 594 (4th Cir. 1994) ("The federal constitution itself vests no liberty interest in inmates in retaining or receiving any particular security or custody status 'as long as the [challenged] conditions or degree of confinement . . . is within the sentence imposed . . . and is not otherwise violative of the Constitution.'" (internal quotations and citations omitted)); *Luken v. Scott*, 71 F.3d 192, 193 (5th Cir. 1995) (holding that "administrative segregation, without more, simply does not constitute a deprivation of a constitutionally cognizable liberty interest").

[12] *See Clark v. Maryland Dept. of Public Safety and Correctional Services*, 316 F. App'x 279, 281 (4th Cir. 2009) ("[A]s prisoners do not have a constitutionally protected right to work while incarcerated, termination from a prison job does not constitute an Eighth Amendment violation."); *Ivey v. Wilson*, 832 F.2d 950, 955-56 (6th Cir. 1987) (per curiam) (noting that there is no constitutional right to a prison job and holding that the plaintiff could not state an Eighth Amendment claim based on the loss of his prison job); *see also Barno v. Ryan*, 399 F. App'x 272, 273 (9th Cir. 2010) (loss of prison job due to classification change does not violate Eighth Amendment).

that must be left to the broad discretion of prison administrators to enable them to manage the prisons safely and efficiently.").

Likewise, Harrison has no federal right to participate in any prison programs. *Mickle v. Moore (In re Long Term Admin. Segregation of Inmates Designated As Five Percenters)*, 174 F.3d 464, 471 (4th Cir. 1999) (inmates' complaints that "they may not participate in prison work, school, or study programs . . . are indeed restrictive, but the restrictive nature of high-security incarceration does not alone constitute cruel and unusual punishment" (citing *Sweet v. South Carolina Dep't of Corrections*, 529 F.2d 854, 857 n.1 (4th Cir. 1975) (en banc)); *Altizer v. Paderick*, 569 F.2d 812, 813 (4th Cir. 1978) (noting that "work assignments of prisoners . . . are matters of prison administration, within the discretion of prison administrators"); *see generally Gaston*, 946 F.2d at 343 ("[V]ariations of daily routine, changes in conditions of confinement . . . and the denial of privileges—matters which every prisoner can anticipate are contemplated by his original sentence to prison—are necessarily functions of prison management that must be left to the broad discretion of prison administrators to enable them to manage the prisons safely and efficiently."); *see also Women Prisoners of District of Columbia Dept. of Corr. v. District of Columbia*, 93 F.3d 910, 927 (D.C. Cir. 1996) (inmates do not have a constitutional right to work or education opportunities); *Walker v. Gomez*, 370 F.3d 969, 973 (9th Cir. 2004) (noting "the Due Process Clause of the Fourteenth Amendment 'does not create a property or liberty interest in prison employment'"); *Beck v. Lynaugh*, 842 F.2d 759, 762 (5th Cir. 1988) (finding states have no constitutional obligation to provide prisoners basic educational or vocational training programs).

Lastly, Harrison was never transferred to either the Red Onion, Sussex I, or Wallens Ridge State Prisons (the higher-level security prisons). Since he was not transferred as a "penalty," he cannot prove the requisite causation necessary to establish a constitutional violation. *See Evans v.*

*Chalmers*, 703 F.3d 636, 647 (4th Cir. 2012) ("[C]onstitutional torts, like their common law brethren, require a demonstration of both but-for and proximate causation." (citing *Murray v. Earle*, 405 F.3d 278, 289-90 (5th Cir. 2005); *Townes v. City of New York*, 176 F.3d 138, 146 (2d Cir. 1999)). Furthermore, the Due Process Clause does not

> protect a duly convicted prisoner against transfer from one institution to another within the state prison system. Confinement in any of the State's institutions is within the normal limits or range of custody which the conviction has authorized the State to impose. That life in one prison is much more disagreeable than in another does not in itself signify that a Fourteenth Amendment liberty interest is implicated when a prisoner is transferred to the institution with the more severe rules.

*Meachum v. Fano*, 427 U.S. 215, 225 (1976); *see also Gaston*, 946 F.2d at 343 ("[C]hanges in a prisoner's location, variations of daily routine, changes in conditions of confinement . . . and the denial of privileges—matters which every prisoner can anticipate are contemplated by his original sentence to prison—are necessarily functions of prison management that must be left to the broad discretion of prison administrators to enable them to manage the prisons safely and efficiently.").

Placement in segregation in connection with an administrative review, a recommendation for transfer to a higher-level security prison, loss of a prison job, and the loss of participation in a prison program do not constitute a due process violation. The Defendants motion for summary judgement as to Claim 3 will be granted.

### B. Cumulative Punishment

In Claim 5 of the AC, Harrison alleges that Defendant McDonald violated his Fourteenth Amendment right to equal protection because McDonald imposed, or authorized prison staff to impose, cumulative punishments for his 106a institutional disciplinary conviction; and the alleged "cumulative punishments" also violated his Eighth Amendment rights.[13]

---

[13] To the extent Harrison is alleging violations of the VDOC's regulations constitute constitutional violations, the Court has already addressed that theory's lack of merit herein. *See*

13

To succeed on a Fourteenth Amendment equal protection claim, Harrison "must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination" on the basis of the inmate's membership in a protected class, such as race, gender, or religion. *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002). "Once this showing is made, the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny." *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001). In the prison context, disparate treatment is not constitutionally offensive if it is "reasonably related to [any] legitimate penological interests." *Shaw v. Murphy*, 532 U.S. 223, 225 (2001). This element requires the inmate to "allege facts sufficient to overcome the presumption of reasonableness applied to prison policies." *Veney*, 293 F.3d at 732.

Here, the warden dismissed Harrison's administrative conviction on appeal and he admits that his penalty (loss of good time) and security level were "correctly restored" by the time of his "May 2024 annual review." Dkt, No. 39 -1 at 3.Thus, Harrison would be hard pressed to find an inmate that is similarly situated within the VDOC, much less one that was treated differently. "The 'similarly situated' standard requires a plaintiff to identify persons materially identical to him or her who has received different treatment." *Kolbe v. Hogan*, 813 F.3d 160, 185 (4th Cir. 2016), *vacated on other grounds*, 849 F.3d 114 (4th Cir. 2017) (en banc). A plaintiff must produce evidence that "show[s] an extremely high degree of similarity." *Id.* (quoting *Willis v. Town of Marshall, N.C.*, 275 F. App'x 227, 233 (4th Cir. 2008)). Harrison has failed to show that any inmate is similarly situated, much less that the similarly situated inmate was treated any differently. Harrison's allegation that his right to equal protection has been violated is conclusory. *See Ashcroft*

---

*supra* at 9.

*v. Iqbal*, 556 U.S. 662, 663 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Richardson v. Clarke*, 52 F.4th 614, 620 (4th Cir. 2022) (holding that "conclusory allegations or denials, without more, are insufficient to preclude" summary judgment (quoting *Wai Man Tom v. Hospitality Ventures LLC*, 980 F.3d 1027, 1037 (2020)).

Harrison also alleges that Defendant McDonald imposed "cumulative punishments," or authorized them to be imposed, in violation of his Eighth Amendment rights. The record establishes that the only punishment imposed as a result of the 106a conviction was a loss of good time, which Harrison admits was restored subsequent to the dismissal of the conviction by the warden—as was his return to "SC1." Dkt. No. 39-1 at 3. The other assertions of punishment concern privileges to which Harrison had no constitutional right (*e.g.* his loss of his job and participation in a program). *See Rhodes v. Chapman*, 452 U.S. 337, 348 (1981) (holding that certain deprivations such as limited work and educational opportunities do not fall within the broad compass of "punishments" within the meaning of the Constitution). *See supra* at 9-12.[14]

### V. Conclusion

For the foregoing reasons, Defendants' Motion for Summary Judgment, Dkt. No. 33, is granted; and the motion to strike, Dkt. No. 39 at 3, is denied. An appropriate Order will issue alongside this Memorandum Opinion.

Entered this __23rd__ day of July 2025.

Alexandria, Virginia

/s/
Rossie D. Alston, Jr.
United States District Judge

---

[14] While loss of good time or credits may be deemed punishment, Harrison admits his loss was eventually "fully" restored after his 106a conviction was dismissed. Harrison's assertion that other consequences that flowed as a result of his conviction do not constitute Eighth Amendment violations.